NATHANIEL CHAMBERLAIN *versus* INHABITANTS OF GUILFORD.

To entitle the holder of a town order that had been issued by mistake, to recover thereon, he must show that he received it from the payee, for value, in the ordinary course of business, and ignorant of any of the circumstances under which it was given by the officers of the town, which would constitute a valid defence to the order, if it had not been negotiated, but remained in the hands of the payee.

ON REPORT.

ASSUMPSIT on a writing, signed by two of the selectmen of the defendant town, of the following tenor:—"Pay W. W. Harris or bearer one hundred dollars out of the town funds, given for his claim for damages in building the bridge at Guilford village, payable in six months from date, with interest." This was dated February 10th, 1857, and directed to David R. Shaw, Treasurer.

The plaintiff was called by his counsel as a witness, and testified that, on February 13th, 1857, he took the order as cash, of Harris, as a payment in part of an award of referees which he had against Harris; *that* subsequently Harris gave him a writing; *that* he knew there was a controversy about the payment of Harris' claim; Harris did not tell witness he had agreed to pay back the money to Guilford.

The defendants introduced the docket entries under the action *Chamberlain* v. *Harris,* February term, 1857, showing a reference of the case at a former term, and judgment on the report of the referees for $312 damages, and $70,02 costs; payment of which the plaintiff acknowledged and discharged the same on the record. Also, the guaranty of Harris, to the plaintiff, dated March 24th, 1857, of the order, and a promise to indemnify him against all costs he shall incur, in a suit to enforce payment of the same against the town.

The defendants also introduced a receipt given by Harris for $1164,58; and there was evidence tending to show that this was the amount agreed on by Harris and a committee of the town to contract for the building of a bridge at Guilford village, for certain parts of which, Harris had contracted to build. That Harris then made no claim for damage at the time of the settlement; but said Chamberlain might claim damage of him, in which case he thought the town should pay him something.

*Isaac Weston* testified, in substance, that Harris, before the order was given, had agreed, if the town objected to its payment, he would return it, or the amount of it; and a writing to the effect was drawn up, and, he supposed, had been signed by Harris, before he placed his name to the order.

The contract of defendants with Harris, for the erection of the bridge; that of the plaintiff with Harris; and also a contract of defendants with Isaac Wharff for erection of abutments, &c., were introduced by plaintiff, and he testified that he was delayed several days in his work, and suffered damage by the non-performance of the contract of Wharff within the time therein stipulated; *that* the question of damage was by Harris and himself submitted to arbitration. And it was admitted that plaintiff recovered of Harris the sum of $36, for damage which he sustained.

*H. Hudson* testified, that he was one of the Selectmen, and prepared the writing for Harris to sign; gave it to him, with the expectation that he would sign it. After witness had signed the order, he passed it to Weston for his signature.

It was in evidence that one of the selectmen refused to sign the order; and that the town refused to pay it.

One witness testified that Harris told him he had agreed to return the order if the town should refuse to pay it. The substance of the material evidence appears in the opinion of the Court.

The parties consented that a nonsuit should be entered, and the evidence reported, for the decision of the full Court upon so much thereof as is admissible, if objected to; the nonsuit to be taken off and the action to stand for trial, if the Court should be of opinion that the plaintiff is entitled to recover; otherwise, the nonsuit is to stand.

*J. H. Rice,* for the plaintiff argued,—

1. That it was clearly within the scope of the duties of the selectmen to adjust the claim of Harris against the town, and the defendants were bound by their determination and acts, citing *Augusta* v. *Leadbetter,* 16 Maine, 45; *Danforth* v. *Hallowell,* 10 Maine, 307; *Blake* v. *Windham,* 13 Maine, 74; *Vanner* v. *Nobleboro',* 2 Maine, 121; *Barnard* v. *Argyle,* 16 Maine, 276, and 20 Maine, 296; *Dennett* v. *Nevens,* 7 Maine, 399.

2. That the plaintiff was *bona fide* the holder of the order, having paid a full consideration therefor, without knowledge of any agreement on the part of Harris, that might affect his right to recover if the suit had been brought by him; that, as an innocent indorsee of a negotiable paper, the plaintiff was entitled to recover in this action.

*A. M. Robinson,* for the defendants, argued:—

1. The case shows that Harris wrongfully obtained the order, even if the selectmen had been authorized to issue it; that its issue to Harris was clearly an excess of authority on the part of the two selectmen, by which the defendants were not bound, unless they have since rendered themselves liable by some act of adoption or ratification. The case shows no such act, but on the contrary, an early and continued repudiation of their liability.

2. The plaintiff is in no better condition to maintain this action, than if it had been instituted by Harris. He is not an innocent indorser without notice. An examination of the evidence renders the conclusion inevitable, that, if the plaintiff was not fully acquainted with all the facts as to the manner in which Harris obtained the order, there were circumstances attending the transaction brought to the plaintiff's knowledge, that were justly calculated to awaken suspicion and inquiry. *Perrin* v. *Noyes,* 39 Maine, 384.

Other questions were argued by the counsel, but the result at which the Court arrived, rendered their consideration unimportant.

The opinion of the Court was drawn up by

TENNEY, C. J. — This action is upon an instrument purporting to be signed by two of three selectmen of the town of Guilford, in the following terms : —

"$100,                                          "No. 157.

"Pay to W. W. Harris, or bearer, one hundred dollars and no cents, out of the town funds, given for his claim for damage, in building the bridge at Guilford village, payable in six months from date, with interest."

It appears, that the other selectman declined to sign the order.

The building committee, chosen to make contracts for the erection of a bridge at Guilford village, on Oct. 11, 1854, contracted with Isaac Wharff, to build the abutments and pier for the bridge, and on the same day made an agreement with W. W. Harris to construct and put up the superstructure of the same bridge. And, on August 10, 1855, said Harris contracted with the plaintiff to do work, which he had agreed with the town to do. The work under these several contracts was to be performed to the acceptance of the building committee, at certain specified times.

The bridge was accepted by the building committee on December 6, 1855, and the bill was made out by Harris, and paid to the full amount in behalf of the town on the same

day.   At the time of the settlement and payment, he did not give a receipt *in full* but *on account* of building the bridge. He declined to give a receipt in full on the ground, as he stated, that the plaintiff might claim damage of him; and if he did, he thought the town ought to pay him something. This statement was made anterior to the time when his receipt was given to the building committee, and was not repeated at the time.

At the time the order was drawn, it was signed by Isaac Weston, one of the selectmen, under the promise of Harris to execute a written agreement to return the order, or pay the amount of it, if the town would not allow it.   Such agreement was written by Hudson, the other selectman, whose name is signed on the order, before the order was drawn; and Hudson and Harris went aside at the · place where the papers belonging to the town were kept, for the purpose of having the agreement executed by Harris.   Weston supposed it was executed, and was to be left there, with the other papers of the town; and he was induced to sign the order, on the promise of Harris, that the agreement, which was written was to be executed at the same time.   It appears that Harris never signed the agreement on his part, but destroyed or retained it.

The delivery to Harris of the order was to be a part of the same transaction with his written agreement, to return it, if not satisfactory to the town, and the possession of it, by him, was unauthorized by a majority of the selectmen, and cannot be treated as valid in the hands of Harris, unless the town have in some way approved the delivery, independent of the promise to execute the agreement on his part.   It does not appear that the town have ever given such approval, but the defence of the suit shows the contrary.

Does the plaintiff stand in a better position to prosecute this suit than would Harris, if it had been commenced in the name of the latter ?

The order shows upon its face the consideration thereof, and the plaintiff knew, before he received it, that there was

a condition about the settlement. There was litigation be-
tween him and Harris, in which he claimed damage, among
other things, on account of being delayed in the prosecution
of the work under his contract with Harris. His claim was
the subject of a suit in court, and it was referred to referees.
An award was made in favor of the plaintiff for the sum of
$312, in damages, $36 of which was on account of the inter-
ruption in the performance of the contract with Harris, and
$70,02, costs. The report of the referees was accepted at
February term, 1857, and a discharge upon the docket signed
by the plaintiff, after the final adjournment of the Court, on
March 7, 1857. He took the order of Harris, on February
13, 1857, and gave his receipt therefor, before the final set-
tlement of the matter. The final settlement was on March
24, 1857, when Harris gave the plaintiff a writing, under a
copy of the order, stating that the original was the order in
suit; that the town of Guilford is liable for the sum named
therein; and, if the plaintiff should fail to collect the same,
he will pay the full amount thereof with interest, together
with such costs as he shall incur in a suit to enforce payment.

The receipt given by the plaintiff for this order is not in
the case, and, of the tenor thereof we have no knowledge.
It is in testimony, that it was taken as an absolute payment.
This, however, is not inconsistent with an agreement to guar-
anty the payment, on a settlement of the judgment in favor
of the plaintiff against Harris, on account of which it was re-
ceived.

From all the facts disclosed in the report of the evidence,
we are not satisfied that the plaintiff received the order for
value, in the ordinary course of business, ignorant of its con-
sideration and the circumstances, to some extent at least, un-
der which it was given. He must be treated as having been
admonished, that a defence would probably be set up, when
he became the absolute owner of the order.

*Nonsuit to stand.*

APPLETON, CUTTING, MAY, DAVIS, and KENT, JJ., concur-
red.